IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS GROVE, JR.,                      )
                                        )
        Petitioner,                     )
                                        )
        v.                              )       Civil Action No. 2:14cv975-WKW
                                        )                  (WO)
UNITED STATES OF AMERICA,               )
                                        )
        Respondent.                     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This case is before the court on a *pro se* motion by Thomas Grove, Jr. ("Grove") to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  Doc. No. 1.[1]

## I.   BACKGROUND

On February 11, 2011, a jury found Grove guilty of possession with intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) (Count 1 of the indictment); two counts of possession of cocaine base, in violation of 21 U.S.C. § 844(a) (Counts 2 and 7); and a single count of possession of cocaine hydrochloride, in violation of 21 U.S.C. § 844(a) (Count 3). After a sentencing hearing on February 3, 2012, the district court sentenced Grove to 97 months in prison on Count 1 and to 36 months each for Counts 2, 3, and 7, with all counts to be served concurrently.[2]

---

[1] Unless otherwise indicated, references to document numbers ("Doc. No.") are to those assigned by the Clerk of Court to pleadings docketed in this action.  Page references are to those assigned by CM/ECF.

[2] On September 1, 2015, the district court reduced Grove's sentence to 78 months in prison pursuant to 18 U.S.C. § 3582(c)(2) based on a retroactive amendment to the Sentencing Guidelines.  *See* Case No. 2:06cr17-WKW, Doc. Nos. 282 and 290.

On direct appeal, Grove argued that (1) the district court abused its discretion by denying his motions for a mistrial and for a new trial based on the prosecutor's remarks during closing argument suggesting to jurors that they could help clean up the community's drug problem by convicting Grove, and (2) the district court improperly included a two-level dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1) in calculating his guideline range.  *See United States v. Grove*, 508 Fed. App'x 855 (11th Cir. 2013).  On January 2, 2013, the Eleventh Circuit Court of Appeals entered an opinion affirming Grove's convictions and sentence.  *Id*.  Grove filed a petition for certiorari to the United States Supreme Court, which was denied on October 7, 2013.

On September 18, 2014, Grove filed this § 2255 motion asserting that his trial counsel rendered ineffective assistance by –

1)      failing to object to testimony from ABC Agent Paul Hayes based on Hayes's alleged conflict of interest and bias;

2)      failing to move for dismissal of the indictment based on the Government's failure during discovery to provide defense counsel with a copy of a lease between Grove and codefendant Richard Shepard that showed Shepard as a lessee of the residence where drug evidence was found;

3)      failing to object to the drug quantity attributed to him for sentencing purposes; and

4)      failing to obtain a transcript of the grand jury testimony of MPD Officer Scotty Edwards for impeachment purposes at trial.

Doc. No. 1 at 3-10.

The Government argues that Grove's claims of ineffective assistance of counsel lack merit and therefore entitle him to no relief.  Doc. No. 14.  After due consideration of the parties' submissions, the record, and the applicable law, the court concludes that Grove's § 2255 motion should be denied without an evidentiary hearing.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*,

## II.   DISCUSSION

### A.   General Standard of Review

Collateral review is not a substitute for direct appeal; therefore, the grounds for collateral attack on final judgments of conviction are limited.  A federal prisoner is entitled to relief under 28 U.S.C. § 2255 only if the district court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

### B.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir.

2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *see Strickland*, 466 U.S. at 687-88 & 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been made.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.      Failure to Object to Testimony of Agent Hayes

Grove contends that his trial counsel, Susan G. James, rendered him ineffective assistance of counsel by failing to object to testimony from Paul Hayes, an agent with the Alabama Alcoholic Beverage Control ("ABC") Board, based on Hayes' alleged conflict of interest and bias.  Doc. No. 1 at 3-5.

From 2003 to 2007, prior to his employment as an ABC agent, Hayes was a narcotics officer with the Montgomery Police Department ("MPD").  On June 8, 2005, while employed by the MPD, Hayes participated in a controlled buy of cocaine base from Grove that led to Grove's arrest in his vehicle with 23 grams of crack in his possession.  That same day, a search warrant was executed on Grove's residence, where officers found additional amounts of crack and powder cocaine.  The drugs seized from Grove on June 8, 2005, were the basis of Counts 1 through 3 of the indictment.  Count 7 stemmed from a later (March 2006) controlled buy of cocaine base from Grove and another search of his residence, where more drugs, drug paraphernalia, and firearms were recovered.

In 2009, after leaving the MPD and before Grove's trial on the federal drug charges, Hayes, then working as an ABC agent, investigated Grove for after-hours serving of alcohol at his nightclub.  Agent Hayes issued Grove a citation for the offense of serving alcohol at a prohibited time. Grove alleges that when Agent Hayes issued the citation, he warned Grove that his conviction for the offense could be used against him "if he ever caught a federal charge."  Doc. No. 1 at 3.

At sentencing in his federal drug case, Grove received one criminal history point based on his misdemeanor conviction for serving alcohol at a prohibited time.  Agent Hayes also testified during the Government's case-in-chief about the June 8, 2005, arrest of Grove and the ensuing search of Grove's residence.  Grove argues that his trial counsel, James, should have sought to exclude Hayes from testifying because Hayes "acted in two different capacities during his investigation of the petitioner."  Doc. No. 1 at 4.

Grove cites no authority, and the court finds none, for his claim that a law enforcement witness is incompetent to testify at a criminal trial when he has participated in different investigations of the defendant, for unrelated offenses, in different capacities.  In an affidavit addressing this claim, James states that she "could see no factual or legal basis" for seeking to exclude Agent Hayes as a witness against Grove, "as no conflict of interest existed."  Doc. No. 13-1 at 2.  Grove presents no meritorious ground upon which James might have successfully argued to exclude testimony from Hayes based on a conflict of interest or bias.  Counsel cannot be ineffective for failing to raise a claim that would fail.  *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).  Because Grove does not demonstrate deficient performance by James or any resulting prejudice, he is entitled to no relief based on this claim.  *Strickland*, 466 U.S. at 687-88 & 694.

### 2. *Failure to Seek Dismissal of Indictment for Discovery Violation*

Grove contends that James rendered ineffective assistance of counsel by failing to move for dismissal of the indictment based on the Government's failure during discovery to provide the defense with a copy of a lease between Grove and codefendant Richard Shepard that showed Shepard as a lessee of the residence at which drug evidence was found.  Doc. No. 1 at 5-7.

Grove and Shepard originally were brought to trial jointly in November 2010.  On the second day of the November 2010 trial, during cross-examination of Agent Hayes, both James and counsel for Shepard learned that, during the June 2005 search of Grove's residence, police recovered a lease showing that Shepard was a lessee from Grove in the residence.  Doc. No. 14-4 at 24-26.  James and counsel for Shepard both indicated to the district court that they were unaware of the lease and had not received a copy from the Government during discovery.  *Id*. at 37-38.  The prosecutor acknowledged that the Government had inadvertently failed to provide the defense with a copy of the lease.  *Id*. at 39.  James argued that the lease should be admitted in evidence, while Shepard's counsel argued against its admission and moved for a mistrial based on the Government's failure to disclose the lease.  *Id*. at 38-40.  The district court initially stated that it was inclined to deny the motion for a mistrial and to exclude admission of the lease.  *Id*. at 40-41.  James, however, continued to argue for admission of the lease as linking the drugs found in Grove's residence to Shepard and tending to suggest that Grove did not live in the residence when the June 2005 search was conducted.  *Id*. at 41-49.

Ultimately, the district court found that the lease showing Shepard as a lessee from Grove created a conflict in their defenses.  The court granted a mistrial on that basis, with both James and counsel for Shepard agreeing that a mistrial was the appropriate remedy.  *Id*. at 52-53.  In granting the mistrial, the court found no fault on the part of the Government.[3]  *Id*.  The court subsequently granted a motion by Shepard's counsel to sever the trials of Shepard and Grove, and the two were retried separately.  Doc. No. 14-5.  James introduced a copy of the lease into evidence at Grove's 2011 retrial, where, in cross-examination of Government witnesses and in arguments to the jury,

---

[3] Although it inadvertently failed to provide the defendants with copies of the lease, the Government had listed the lease on its exhibits list and intended to introduce the lease into evidence in its case-in-chief.  *See* Doc. No. 14-4 at 51-52.

she suggested that the lease created doubt whether Grove was accountable for the drugs found in the June 2005 search of the residence. *See* Doc. No. 14-6 at 21, 92-93; Doc. No. 14-8 at 114-15; Doc. No. 14-9 at 39-40.

Grove argues that James, instead of attempting to use the lease as exculpatory evidence at his retrial, should instead have moved for dismissal of the indictment based on the Government's discovery violation. Doc. No. 1 at 6-7. He contends that the Government willfully "suppressed" the lease in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that James's failure to seek dismissal of the charges against him on this basis was professionally unreasonable and prevented him from obtaining a more favorable outcome. *Id.*

> The Supreme Court has not directly decided when, if ever, dismissal with prejudice is a remedy for a *Brady* violation. *Virgin Islands v. Fahie,* 419 F.3d 249, 252 (3d Cir. 2005). Indeed, "[d]ismissal of an indictment with prejudice is the most severe sanction possible." *United States v. Isgro,* 974 F.2d 1091, 1097 (9th Cir. 1992). Given the harshness of this remedy, courts have indicated that factors such as recurring violations, willful misconduct, and prejudice are necessary preconditions for dismissal with prejudice. *See Fahie,* 419 F.3d at 253-55; *United States v. Jones,* 620 F.Supp.2d 163, 185-93 (D. Mass. 2009) (Wolf, J.) (collecting cases); *United States v. Dollar,* 25 F.Supp.2d 1320 (N.D. Ala. 1998) (Clemon, J.) (dismissing conspiracy indictment after government defied numerous court orders to provide *Brady* material).

*United States v. McGregor*, No. 2:10CR186-MHT, 2012 WL 235518, at *5 (M.D. Ala. Jan. 25, 2012).

Here, at the November 2010 mistrial, the district court expressly found no fault by the Government for its failure to provide the defense with a copy of the lease. No evidence suggests that the Government's failure was willful. Indeed, it appears that the Government itself intended to introduce the lease into evidence, which undermines any suggestion of intent to suppress evidence. The district court was initially reluctant even to grant a mistrial, making it highly unlikely that the court would have granted the severe sanction of dismissal of the indictment with

prejudice had James moved for such a sanction.  As the Government argues, it is also unclear how, in the end, Grove's defense was prejudiced by the untimely disclosure of the lease, since James stated to the court at the November 2010 mistrial that if she had been provided with the lease earlier, she would have moved for a severance – the remedy the district court ultimately granted.

Because Grove demonstrates little likelihood that the district court would have granted a motion to dismiss the indictment by James, he fails to show deficient performance by James or any resulting prejudice.  *Strickland*, 466 U.S. at 687-88 & 694.  Consequently, he is not entitled to relief based on this claim of ineffective assistance of counsel.

### 3.      *Failure to Object to Attributed Drug Quantity*

Grove contends that his lawyer at sentencing, Jeff P. Manciagli, rendered ineffective assistance of counsel when he failed to object at the sentencing hearing to the drug quantity attributed to Grove.  Doc. No. 1 at 7-9.  In particular, Grove argues that Manciagli should have objected to the presentence investigation report's ("PSI") finding that Grove was accountable for 23 grams of cocaine base under Count 1 of the indictment although, he says, the jury found him guilty under Count 1 of possessing with the intent to distribute only 21.5 grams of cocaine base. *Id*. at 8.  In making this claim, Grove points to the trial testimony of Bradley Fleming, a forensic drug chemist with the DEA, who testified that he determined Government Exhibit 9 (the cocaine base underlying Count 1) to have a net weight of 21.5 grams.  Grove argues that Manciagli's failure to pursue an objection at sentencing to the attributed drug amount resulted in an unwarranted two-level increase in his base offense level under U.S.S.G. § 2D1.1(c), which provides for a base offense level of 22 for attributed amounts of cocaine base of at least 16.8 grams but less than 22.4 grams, and a base offense level of 24 for attributed amounts of cocaine base of at least 22.4 grams but less than 28 grams.  *See* Drug Quantity Table, U.S.S.G. § 2D1.1(c).  Grove further maintains

that Manciagli's failure to challenge the attribution of 23 grams of cocaine base to him resulted in a violation of *Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013).  Doc. No. 1 at 7-9.

The record reflects that on May 4, 2011, defense counsel filed an objection to the PSI's finding that Grove was accountable for 23 grams of cocaine base under Count 1, arguing that Grove was instead responsible for only 21 grams of the drug.  *See* Doc. No. 14-22 at 20.  It appears that when presentence objections to the PSI were filed, Grove was represented by James and that Manciagli had not yet entered a notice of appearance as Grove's counsel.  According to Manciagli, James filed the presentence objections, although Manciagli represented Grove at the sentencing hearing.  *See* Doc. No. 11 at 2.  Manciagli did not pursue the objection to the attributed drug amount at the sentencing hearing.

In the addendum to the PSI responding to the presentence objections by defense counsel, the Probation Officer explained that 23 grams of cocaine base were properly attributed to Grove, because:

> According to the DEA laboratory report, the net weight of the cocaine base involved in count one is 23.0 grams, not 21 grams. The reserve weight is 21.7 grams; however, the net weight is used for drug calculation purposes.

Doc. No. 14-22 at 20.[4]

Although, as Grove observes, the forensic chemist Fleming testified that he determined Government Exhibit 9, the cocaine base underlying Count 1, to have a net weight of 21.5 grams, Doc. No. 14-8 at 176-77, Fleming clarified that when the seized drugs were initially tested, the net weight was 23 grams, that he analyzed the drugs after they had been previously tested, and that

---

[4] As the Government says, the Probation Officer's explanation was consistent with the provision of the Guidelines Manual stating that "[u]nless otherwise specified, the weight of a controlled substance … refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."  U.S.S.G. § 2D1.1 n.(A).

the weight of the drugs decreased from test to test because of "sample consumption during analysis." *Id*. at 182-83.

Here, the DEA lab report and Fleming's testimony, considered in its totality, established that a net weight of 23 grams of cocaine base was the drug amount underlying Count 1. Consequently, that amount was properly attributed to Grove in determining his base offense level under § 2D1.1(c). Pursuit of an objection to the attributed drug amount would have been unavailing. Therefore, Grove fails to establish ineffective assistance of counsel by Manciagli.

Furthermore, even if Manciagli had somehow successfully pursued an objection to the attributed drug amount, the district court explicitly stated at sentencing that, based on Grove's criminal history and the seriousness of his offense, a sentence of less than 97 months "would be unreasonable irrespective of what [Grove's] guideline range [was]." Doc. No. 14-15 at 25-26. The district court also noted, in agreement with the Government, that Grove's calculated guideline range reflected none of the drugs giving rise to his convictions on Counts 2, 3, and 7. *See id*. at 26-27. There is no reasonable probability, then, that Grove's sentence would have been different had he been held accountable for only 21.5 grams, and not 23 grams, of cocaine base and had the PSI calculated a base offense level two levels lower than what was calculated. *See Glover v. United States*, 531 U.S. 198, 203-04 (2001) (§ 2255 movant seeking to establish prejudice based on sentencing error must show his sentence would have been lower but for counsel's deficient performance). Grove's inability to demonstrate prejudice precludes collateral relief on this claim.

As for Grove's contention that *Alleyne* was violated because of the attribution of 23 grams of cocaine base rather than 21.5 grams, the drug amount attributed to Grove did not influence the mandatory minimum sentence applied in his case. In *Alleyne*, the Supreme Court held that the enhancers described in 18 U.S.C. § 924(c)(1)(A)(ii) and (iii) – for brandishing or discharging a

firearm – triggering higher mandatory minimum sentences, must be treated as elements of separate, aggravated offenses, to be alleged in the indictment and proved beyond a reasonable doubt.  133 S.Ct. at 2151, 2155.  *Alleyne*, however, does not prohibit the sentencing court from fact finding that increases a sentence under the Sentencing Guidelines.  Judicial fact finding that affects guidelines calculations does not fit within the category of facts required under *Alleyne* to be proved beyond a reasonable doubt.  *See United States v. Charles*, 757 F.3d 1222, 1225 (11th Cir. 2014) ("Accordingly, [after *Alleyne*,] a district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence – so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict.").  *Alleyne* is inapplicable to Grove's sentence.

### 4.      Failure to Obtain Grand Jury Transcript

Grove contends that James rendered ineffective assistance of counsel by failing to obtain a transcript of the grand jury testimony of MPD Officer Scotty Edwards to use for impeachment purposes at trial.  Doc. No. 1 at 9-10.  The record, however, reflects that James did have a transcript of Officer Edwards's grand jury testimony, which she used in an effort to impeach his trial testimony.  *See* Doc. No. 14-8 at 116; Doc. 13-1 at 3.

Grove specifically objects to James's failure to impeach Officer Edwards by using his grand jury testimony that all three phone calls the MPD made to Grove through a confidential informant as part of a controlled buy of cocaine base on June 8, 2005, were recorded, when only the first two calls were recorded.  Doc. No. 1 at 9-10.  However, by the time Officer Edwards testified at trial, James had already thoroughly cross-examined Agent Paul Hayes regarding the phone calls made to Grove.  Doc. No. 14-6 at 95-105; Doc. No. 14-7 at 132-33.  Unlike Officer Edwards, Agent Hayes was physically present when the phone calls were made by the confidential

12

informant, and Hayes explained in his testimony that the third phone call to Grove was not recorded because it involved a last-minute change of location for the meeting with Grove to buy the drugs, when Hayes and the confidential informant were in a car driving to meet Grove.  Doc. No. 14-6 at 47-49.  Agent Hayes explained that the third phone call was not recorded because he was "in a time crunch."  *Id*. at 48.

Had James sought to discredit Officer Edwards – or, for that matter, Agent Hayes – with Officer Edwards's erroneous grand jury testimony that the third phone call was recorded, the jury could reasonably have concluded that Officer Edwards was merely confused about which of the calls were recorded, especially since it was clear that Officer Edwards, unlike Agent Hayes, was not present when the calls to Grove were made and no claim had ever been made – either at trial or before the grand jury – that Officer Edwards was present when the calls were made.  James could have made a reasonable strategic decision not to seek to impeach Officer Edwards on a matter of limited materiality.  Certainly, Grove can show no prejudice arising from James's failure to use Officer Edwards's grand jury testimony in this manner.[5]  The decision as to how and whether to cross-examine a witness is "a tactical one well within the discretion of a defense attorney." *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985).  Grove is not entitled to any relief based on this claim of ineffective assistance of counsel.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Grove be DENIED with prejudice, as the claims therein entitle him to no relief.

---

[5] James did use other aspects of Officer Edwards's grand jury testimony in an effort to impeach him at trial.  *See, e.g.,* Doc. No. 14-8 at 116-22, 156-57.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the petitioner.  The petitioner is DIRECTED to file any objections to this Recommendation on or before November 14, 2016.  Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the petitioner objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson,* 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 28th day of October, 2016.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge

14